UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT DORNEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 15-cv-11505-ADB |
| | * | |
| PINDROP SECURITY, INC., and | * | |
| VIJAY BALASUBRAMANIYAN, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

September 25, 2015

BURROUGHS, D.J.

## I.  Introduction

Plaintiff Robert Dorney ("Dorney") filed this action against his former employer, Pindrop Security, Inc. ("Pindrop"), and its CEO Vijay Balasubramaniyan (together "Defendants"), claiming that Defendants have withheld commission payments owed to Dorney for three deals he secured while working for Pindrop. Based on the alleged conduct, Dorney brings several claims against the Defendants, including: failure to pay and unlawful retaliation under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148; breach of contract; breach of the implied covenant of good faith and fair dealing; and quantum meruit/unjust enrichment.

Before the Court is the Defendants' Motion to Dismiss [ECF No. 6], which moves to dismiss the entire complaint for lack of personal jurisdiction or <u>forum non conveniens</u>, and alternatively, moves to dismiss Count III (retaliation), Count V (implied covenant of good faith and fair dealing), and Count VI (quantum meruit/unjust enrichment) for failure to state a claim

1

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed herein, the Defendants' motion is DENIED in all respects.

## II.     Personal Jurisdiction

### A.  Legal Standard

As the plaintiff, Dorney bears the burden of establishing the Court's personal jurisdiction over the Defendants. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). Under the "prima facie" standard for determining whether a plaintiff has met its burden, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing, and we construe these proffers in a light most favorable to plaintiff's jurisdictional claim." Id.

The Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, § 3, provides, in relevant part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth. . . ." In Massachusetts, "[w]e may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" Daynard, 290 F.3d at 52 (quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972)).

The First Circuit applies a three-prong test in determining whether the exercise of personal jurisdiction over a nonresident defendant is constitutional:

> (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Daynard, 290 F.3d at 60). The plaintiff must succeed on all three prongs in order to establish jurisdiction. Id.

### B. Discussion

Without reciting all of Dorney's proffered facts and allegations, which at this stage the Court accepts as true, the Court highlights those items that are most salient to the First Circuit's three-part personal jurisdiction test.

Pindrop, a Delaware corporation with a principal place of business of Atlanta, Georgia, provides anti-fraud technology to enterprise call centers and phone users. [ECF No. 9 ("Compl.") ¶¶ 2, 6.] Vijay Balasubramaniyan, the CEO of Pindrop, resides in Georgia. [Compl. ¶ 3; ECF No. 7, at 2.] Pindrop first contacted Dorney, a Massachusetts citizen, regarding potential employment on September 19, 2012 and ultimately hired Dorney as Vice President of Sales, East, under a letter agreement dated January 27, 2013. [ECF No. 14, Ex. 1 ("Dorney Aff.") ¶¶ 2-4.] Pursuant to the letter agreement, Dorney was to be paid an annual base salary of $150,000 and commission-based bonuses calculated and paid based on Pindrop's sales commission program. Id., at Ex. G. Dorney signed the letter agreement, addressed to his Foxboro, Massachusetts address, at his home office in Massachusetts and emailed it to Pindrop from his home office. Id.

¶ 12. Terms of the letter agreement were negotiated by phone and email while Dorney was located in Massachusetts. Id. ¶¶ 8-12.

Over the course of Dorney's employment, Pindrop and Dorney understood and expected that Dorney would work remotely from his Massachusetts office. Id. ¶ 13. To that end, in addition to the compensation package set forth in the letter agreement, the Defendants agreed to cover the costs of Dorney's Massachusetts home office and to provide health insurance with local coverage in Massachusetts. Id. ¶ 8.

The dispute arises from deals Dorney allegedly secured on behalf of Pindrop with Standard Chartered Bank, First Data, and Citibank, and for which he was not paid commissions allegedly owed. Though Standard Chartered Bank, First Data, and Citibank are not located in Massachusetts, Dorney arranged all three sales while working from his Massachusetts home office and, from his office, engaged in significant emails and telephone communications with Mr. Balasubramaniyan and other Pindrop employees concerning those sales. Id. ¶¶ 18-19. In addition, Dorney engaged in efforts to sell Pindrop's products to Massachusetts-based businesses over the course of his employment. Id. ¶ 17. As a Pindrop employee, Dorney exchanged "hundreds, if not thousands of emails" with Mr. Balasubramaniyan and other Pindrop employees, most of which he sent and received from his Massachusetts office. Id. ¶ 15.

Dorney alleges that Pindrop terminated his employment on October 23, 2014, after the deals with Standard Chartered Bank and First Data were completed, in retaliation for him asking that he be paid the commissions due on these sales. Compl. ¶¶ 14, 29. Dorney further asserts that he was terminated while the deal with Citibank was "being reduced to writing" and that upon information and belief, Pindrop and Citibank ultimately executed an agreement, for which Dorney has also not received a commission. Id. ¶¶ 14-15.

Applying the First Circuit's three-part test to these facts, the Court holds that Dorney has met his burden of establishing personal jurisdiction over the Defendants.

To satisfy the first prong, relatedness, the plaintiff must show "'a demonstrable nexus between its claims and the defendant's forum-based activities, such that the litigation itself is founded directly on those activities.'" Downer, 771 F.3d at 66 (alterations adopted) (quoting Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011)). The test is a "flexible, relaxed standard." Id. In a contract case, the analysis is conducted "with reference to the contacts the defendant creates with the forum state, though such contacts may be 'intertwined' with the activities of the plaintiff." Id. (quoting Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014)). In addition, the Court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." Burger King v. Rudzewicz, 471 U.S. 462, 478-79 (1985). Moreover, a defendant need not be present in the forum state to be subject to jurisdiction there. Calder v. Jones, 465 U.S. 783, 789 (1984); cf. Downer, 771 F.3d at 65 ("'It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines . . . .'") (quoting Burger King, 471 U.S. at 476).

Dorney negotiated the letter agreement from Massachusetts, signed the letter agreement (addressed to his Massachusetts address) while in Massachusetts, and entered the letter agreement with the mutual understanding that he would be working from Massachusetts. Dorney's employment duties were largely conducted from his home office in Massachusetts, and Mr. Balasubramaniyan and other Pindrop employees frequently communicated with him there regarding Pindrop business. The Defendants argue that jurisdiction in Massachusetts is improper because the deals for which Dorney seeks commission concern companies based outside of the

5

state. [ECF No. 7, at 8.] However, "[the defendants] had an ongoing connection with Massachusetts in the performance under the contract" and "[Plaintiff]'s claims arose from the alleged breach of that contract. That is enough to establish relatedness." Downer, 771 F.3d at 66. Unlike in Cossart v. United Excel Corp., No. 14-10307-GAO, 2014 U.S. Dist. LEXIS 138343 (D. Mass. Sept. 30, 2014), upon which Defendants rely [ECF No. 7, at 7-9], the contract at issue here was negotiated while the plaintiff was located in Massachusetts, and much of the plaintiff's work was conducted from Massachusetts. 2014 U.S. Dist. LEXIS 138343, at *5 (granting motion to dismiss for lack of personal jurisdiction in Massachusetts where, "the commission [plaintiff] allegedly deserves came from a proposed project he worked on in California," and "[plaintiff's] own employment contract was negotiated in Kansas").

To satisfy the second prong of the jurisdictional framework, Dorney must show that the Defendants' actions "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [Massachusetts'] laws and making [their] presence before [Massachusetts'] courts foreseeable." Daynard, 290 F.3d at 60. "The cornerstones of this inquiry are voluntariness and foreseeability." Downer, 771 F.3d at 66. Thus, the minimum contacts needed to establish jurisdiction cannot be "random, fortuitous, or attenuated." Burger King, 471 U.S. at 475.

The Defendants argue that there was no requirement that Dorney reside in or conduct his employment duties from Massachusetts, and no expectation that he would develop business there. [ECF No. 7, at 3.] Pindrop entered into the letter agreement with Dorney, however, knowing that he would work from Massachusetts. Dorney Aff., ¶¶ 8, 13. Pindrop's employees, including Mr. Balasubramaniyan, had significant contact with Dorney in Massachusetts via email and telephone, in some instances for sales opportunities involving Massachusetts

corporations. Id. ¶¶ 15, 17. Therefore, "[the defendants] clearly intended to do business and availed [themselves] of the privilege of actually conducting business in and from Massachusetts. Moreover, it was foreseeable that [the defendants] could end up in a Massachusetts courtroom in a case of a breach of [their] contract with [plaintiff]." EIQnetworks, Inc. v. BHI Advanced Internet Solutions, Inc., 726 F. Supp. 2d 26, 35 (D. Mass. 2010).

The third prong in the jurisdictional analysis is reasonableness. The First Circuit analyzes reasonableness on the basis of five factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (citing Burger King, 471 U.S. at 477).

The defendant's burden of appearance is "only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Defendants have not alleged any special or unusual burden; that Pindrop is located in Georgia with no offices in Massachusetts and Mr. Balasubramaniyan is a citizen of Georgia is neither special nor unusual. Moreover, Massachusetts has an interest in providing a convenient and effective forum in which its citizens may resolve disputes with their corporate employers, especially when the dispute may implicate Massachusetts law.[1]

In sum, the Court holds that Dorney has alleged facts establishing that Defendants had sufficient minimum contacts with Massachusetts such that maintenance of the suit in this forum

---

[1] Defendants' reference to the Dorney's restrictive covenant agreement with Pindrop, which designates Atlanta, Georgia as the sole forum, is not relevant—the restrictive covenant agreement is not at issue in this case. The relevant contract—the letter agreement dated January 27, 2013—does not have a choice of law or forum selection clause. [ECF. No. 14, Ex. G.]

would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

### III.    Forum Non Conveniens

The Defendants argue that even if the Court concludes the exercise of jurisdiction in Massachusetts is proper, it should dismiss Dorney's complaint on the basis of forum non conveniens.[2] The Court also rejects this argument.

Forum non conveniens is a discretionary tool a district court may use to dismiss a claim, even when it has jurisdiction. Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007). It is tempered by the well-established principle that a "plaintiff's choice of forum should rarely be disturbed." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). When moving to dismiss for forum non conveniens, the defendant bears the "heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.'" Adelson, 510 F.3d 43, 52 (1st Cir. 2007) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)). The burden on defendant is especially high where a plaintiff has brought the action in his home forum. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) (holding that where plaintiff has initiated action in home forum, defendant must make "clear showing" of facts which establish either "oppressiveness and vexation" to defendant or that chosen forum is "inappropriate").

Here, though an adequate alternative forum exists, considerations of convenience and judicial efficiency do not sufficiently favor litigating the claim elsewhere. Dorney brought this

---

[2] "The doctrines of personal jurisdiction and forum non conveniens share certain similarities, but they embody distinct concepts and should not casually be conflated." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 150 (1st Cir. 1995).

8

action in his home state, and he alleges multiple violations of the Massachusetts Wage Act, deriving from a contract negotiated and signed in Massachusetts. That Defendants' records are located in Georgia does not compel the Court to dismiss the case in favor of that jurisdiction. "While the location of records and documents relevant to the litigation is a factor that the court should consider, it is not a particularly important factor because of the ease with which that information can be transported to another jurisdiction." Blu Homes, Inc. v. Kaufmann, No. 10-11418-DJC, 2011 WL 3290362, at *10 (D. Mass. July 29, 2011) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3853). Likewise, because Dorney is located in the forum state, the location of the Defendants' witnesses is not a compelling argument for dismissal, since the "presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001).

**IV.     Failure to State a Claim**

Finally, the Defendants argue that the Court should dismiss Counts III (retaliation), V (implied covenant of good faith and fair dealing), and VI (quantum meruit/unjust enrichment) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011). However, the Court is not bound to accept as true legal conclusions couched as factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, under the liberal notice pleading standard of Fed. R. Civ. P. 8(a)(2), a plaintiff must submit "a short and plain statement of the claim" in order to give the defendant "fair notice" of the claim and the grounds

upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although notice pleading does not require detailed factual allegations, "more than labels and conclusions" are required to survive a motion to dismiss. Id. The facts alleged must "raise a right to relief above the speculative level," and a "formulaic recitation of the elements of a cause of action" is not enough. Id. Here, the Court finds the Defendants' arguments as to all three counts unavailing.

### A. Count III: Retaliation

Section 148A of the Massachusetts Wage Act states: "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." Mass. Gen. Laws ch. 149, § 148A. Termination is the quintessential example of a penalization or adverse employment action. Mogilevsky v. Wellbridge Club Mgmt., Inc., 905 F. Supp. 2d 405, 412 (D. Mass. 2012). Moreover, "a complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an 'action.'" Smith v. Winter Place LLC, 447 Mass. 363, 367 (2006).

Here, Dorney alleges that the deals with Standard Chartered Bank and First Data were completed in September 2014. Compl. ¶¶ 11-12. He then asked to be paid commissions on those sales, and the Defendants refused to make the requested payments. Id. ¶ 13. On October 23, 2014, Pindrop allegedly terminated Dorney's employment "in response to" his asking to be paid commission on those sales. Id. ¶¶ 14, 29. Accepting these facts as true and drawing all reasonable inferences in favor of Plaintiff, the allegations are sufficient to make out a plausible claim of retaliation under the Massachusetts Wage Act. Twombly, 550 U.S. at 569.

### B. Count V: Breach of Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, "'[e]very contract implies good faith and fair dealing between the parties to it.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569-70 (2010)). The implied covenant provides that "'neither party [to a contract] shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract.'" Stello v. Ark Eng'g & Technical Servs., Inc., No. CV 15-10590-PBS, 2015 WL 4254080, at *1 (D. Mass. July 14, 2015) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991)). In the employment context, the implied covenant prevents employers from being unjustly enriched by "depriv[ing] sales agents of commissions by 'terminating the contractual relationship when the agent is on the brink of successfully completing the sale.'" Id. (quoting Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 104-05 (1977)); see also Harrison v. NetCentric Corp., 433 Mass. 465, 473 (2001) ("The Fortune case and its progeny provide that an employer is accountable to a discharged employee for unpaid compensation if the employee were terminated in bad faith and the compensation is clearly connected to work already performed.").

In the present case, Dorney alleges that Pindrop terminated his employment about one month after he requested to be paid commissions for the Standard Chartered Bank and First Data sales and while the Citibank deal was being "reduced to writing, which would result in Dorney receiving a commission." Compl. ¶ 14. Dorney alleges that Pindrop and Citibank ultimately executed an agreement after Dorney's termination. Id. ¶ 15. These allegations, accepted as true and with all inferences drawn in Dorney's favor, constitute a plausible claim for breach of the implied covenant of good faith and fair dealing. See, e.g., Manning v. Healthx, Inc., No. 15-11936-RGS, 2015 U.S. Dist. LEXIS 96238, at *7 (D. Mass. July 23, 2015) ("I do not agree that,

11

given the deferential view to which [plaintiff's] allegations is entitled, [defendant's] good faith can be established as a matter of law."); Bosque v. Wells Fargo Bank, N.A., 762 F.Supp.2d 342, 353 (D. Mass. 2011) ("Although the complaint does not allege that defendant acted with dishonest purpose or deliberate wrongdoing, [the allegations are] sufficient to state a claim under the breach of the implied covenant of good faith and fair dealing. Resolution of the contours of the breach, if any, is best left to a later stage of the proceeding."). Given the timing of Dorney's termination and Pindrop's subsequent completion of the Citibank deal, Dorney has alleged sufficient facts for his good faith and fair dealing claim to survive a Motion to Dismiss.

### C. Count VI: Quantum Meruit/Unjust Enrichment

In support of Count VI, Dorney has pled essentially the same allegations that support the contract-based claims (described previously). Therefore, in Count VI, Dorney states an alternative equitable theory of recovery available "where the remedy at law is not clear or as adequate and complete as that which equity can afford." Massachusetts v. Mylan Labs., 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (quoting G.E. Co. v. Callahan, 294 F.2d 60, 64 (1st Cir. 1961)).

To sustain a claim for unjust enrichment, a plaintiff must show: "'(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.'" Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 52 (D. Mass. 2013) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).

Dorney alleges that he secured three sales for Pindrop for which he has not received compensation. Therefore, as alleged, the Defendants have received a benefit for which they have

not paid, and have thus been unjustly enriched. Taking these allegations as true and viewing them in the light most favorable to Dorney, the Court holds that Dorney has made out a plausible claim for unjust enrichment. At this stage in the litigation, the existence of statutory and contractual claims does not necessitate the dismissal of Dorney's equitable quantum meruit/unjust enrichment claim.[3] See e.g., Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (holding that though breach of contract and unjust enrichment claims are mutually exclusive, both may proceed past the pleading stage); Mylan Labs., 357 F. Supp. 2d at 324 (D. Mass. 2005) ("The Court need not resolve these issues at this stage of the proceeding, since [Plaintiff] may have to elect only one theory of recovery eventually, and will not force Plaintiff to choose its remedy at this stage of the litigation.").

V. **Conclusion**

For the above reasons, the Defendants' Motion to Dismiss is DENIED.

**SO ORDERED.**

Dated: September 25, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE

---

[3] It is unclear from the complaint whether Dorney is pursuing an equitable claim of unjust enrichment or quantum meruit. Compl. ¶¶ 38-41. Quantum meruit is a "species of unjust enrichment," Bisbano v. Strine Printing Co., 737 F.3d 104, 109 n.2 (1st Cir. 2013), the elements of which are "(1) the plaintiff conferred a reasonable benefit upon the defendants; (2) defendants accepted the services with the reasonable expectation of compensating the plaintiff; and (3) the plaintiff provided the services with the reasonable expectation of receiving compensation." Backman v. Smirnov, 751 F. Supp. 2d 304, 314 (D. Mass. 2010) (citing Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106-107 (D. Mass. 1990)). Under the "more general" unjust enrichment cause of action, the plaintiff "is not required to have had a reasonable expectation he would be compensated by [defendant] for his services." Depianti v. Jan-Pro Franchising Int'l, Inc., 39 F. Supp. 3d 112, 142 (D. Mass. 2014). This distinction is irrelevant for the purposes of adjudicating Defendants' Motion to Dismiss.